QUESTION: May two adjoining municipalities create a consolidated police department to be subject to the supervision and control of an administrative entity under either Art. VIII, s. 4, State Const., or the Interlocal Agreement Act of 1969, s. 163,01, F.S., assuming that only the respective laws of each municipality will be enforced therein?
SUMMARY: It is doubtful that two cities could enter into an interlocal agreement under s. 163.01, F.S., providing for a consolidated police department under the supervision and control of an administrative entity independent of either city. However, under Art. VIII, s. 4, State Const., the cities could, with the approval of the electorate of each city, contract for the performance of law enforcement duties by the police force of one city in the other city, under the joint supervision and control of the police chiefs of each city. The Interlocal Agreement Act, s.163.01, F.S., authorizes municipalities to exercise jointly through an interlocal agreement "any power, privilege, or authority which such agencies share in common and which each might exercise separately." It provides also that the interlocal agreement "may provide for a separate legal or administrative entity to administer or execute the agreement which may be a commission, board, or council constituted pursuant to the agreement." But it also contains this caveat: This section is intended to authorize the entry into contracts for the performance of service functions of public agencies, but shall not be deemed to authorize the delegation of the constitutional or statutory duties of state, county, or city officers. Section 163.01(15), F. S. It is a well-settled rule that, absent specific statutory authority, "city ordinances must not constitute an improper delegation of legislative, executive, or administrative power." Blitch v. City of Ocala, 195 So. 406 (Fla. 1940). And even the legislature cannot authorize the delegation of essential governmental powers to one not commissioned as an officer. See Florida Dry Cleaning and Laundry Bd. v. Economy Cash Carry Cleaners, 197 So. 550, 556 (Fla. 1940), holding that the board could not lawfully delegate to its chief supervisor the power to adopt rules and regulations for the conduct of the hearings of the board. Accord: Blitch v. Buchanan, 131 So. 151 (Fla. 1930); and Dade County v. State, 116 So. 72, 76 (Fla. 1928). In the Dade County case the court said that "[t]he Constitution does not contemplate that essential governmental power or authority may be exercised by a corporate agency whose members are not duly commissioned officers." The exercise of the law enforcement and arrest powers are clearly essential governmental powers of the city. See Curry v. Hammond, 16 So.2d 523, 524 (Fla. 1944), in which it was said that "[i]t can hardly be questioned that a patrolman on a city police force is clothed with sovereign power of the city while discharging his duty. In that event his status is that of an officer." Accord: State v. Martens, 193 So. 835
(Fla. 1940), stating that "no right is more sacred or more jealously guarded than the one that liberty shall not be infringed except by due process of law." And it seems clear that such an interlocal agreement could not validly create an administrative commission, board or council, composed of persons who were not duly-commissioned officers of the cities, to administer on behalf of the two municipalities — and independently of each — their law enforcement powers and duties. Cf. s. 23.124(3)(b), F.S., of the Florida Mutual Aid Act, requiring a sheriff to be designated as the regional law enforcement coordinator to carry out coordinated law enforcement plans and mutual aid when coordinated state and local law enforcement activity is necessary to protect the public peace and safety and preserve the lives and property of the people of this state in certain emergencies and disasters designated in that law. And even assuming that the consolidated police force would be supervised and directed by an administrative board composed of the police chiefs of each city, I have been unable to conceive of any way in which such a coordinated police force could be administered without contravening the provision of the statute, s. 163.01(15), supra, respecting the delegation of the constitutional or statutory duties of city officers. I have considerable doubt, therefore, that such a consolidated police force should be attempted under the Interlocal Agreement Act, s.163.01, supra. However, under Art. VIII, s. 4, State Const., any function or power of a county, municipality or special district "may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee." (Emphasis supplied.) You state in your letter that you plan to obtain the approval of the electorate of both cities before engaging in a consolidated law enforcement operation; and it would seem that, under this constitutional authority, with electorate approval, each city could contract with the other for the performance of law enforcement duties by its police officers in the other city, under the general supervision of a board composed of the chiefs of police of each city. Under such a plan, the integrity of the police forces of each city would be maintained; and as the policemen of one city would be enforcing the laws of the other city under contractual authority expressly authorized by the constitution, no charge of unlawful delegation of authority could be made. Such a plan would also enable the police force of one city to continue to participate in that city's police pension plan and would preserve the right of the city to participate in the distribution of the tax fund established in ss.185.07, 185.08, and 185.09, F.S.